UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-315-FDW

| JENYON R. McELVINE, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | **ORDER** |
|  | ) |  |
| KEN BEAVER, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

**THIS MATTER** comes before the Court on the parties' Motions for Summary Judgment, (Doc. Nos. 50, 52, 55). Additional Motions filed by the *pro se* Plaintiff are also pending. (Doc. Nos. 43, 44, 48, 49).

**I.    BACKGROUND**

*Pro se* incarcerated Plaintiff's Complaint, (Doc. No. 1), passed initial review on his claim that, while he was incarcerated at the Lanesboro Correctional Institution,[1] Defendants Angela Rorie and Edward Gazoo knew that Plaintiff was being moved to close custody without a classification hearing or disciplinary board hearing in violation of NCDPS prison policy and procedures.[2] See (Doc. No. 10). The parties have filed cross-motions for summary judgment.

**(1)    Complaint** (Doc. No. 1)

Plaintiff alleges that Unit Manger Rorie and Program Director Gazoo knew that Plaintiff was being moved to a close custody classification pod to punish him, without first having a

---

[1] Plaintiff presently resides at the Tabor C.I.
[2] An excessive force claim also passed initial review but it was dismissed for failure to exhaust administrative remedies. See (Doc. No. 42).

classification hearing or disciplinary board hearing which violates NC DPS prison policy and procedures. Rorie used her job and power over housing to discriminate against Plaintiff. Plaintiff was transferred to Polk C.I. on September 30, 3016, a high security "Supermax" control prison as punishment without due process. (Doc. No. 1 at 4). He seeks declaratory injunction, preliminary and permanent injunction, compensatory and punitive damages, a jury trial, costs, and any relief the Court deems just, proper, and equitable.

**(2) Plaintiff's Motions for Summary Judgment**

    **(A) Motions** (Doc. Nos. 50, 52)

Plaintiff cites Rule 56 of the North Carolina rules of civil procedure as well as Rules 33 and 34 of the Federal Rules of Civil Procedure. He seeks judgment against Defendants because Plaintiff allegedly sent interrogatories to them that they failed to answer within 30 days. He also requests summary judgment on his claim that Defendants used excessive force against him.

    **(B) Defendants' Response** (Doc. No. 58)

Defendants argue that Plaintiff's Motions should be denied because he appears to be attempting to re-argue his excessive force claims which were previously dismissed for failure to exhaust administrative remedies. Plaintiff does not address the only remaining claim in the case – his due process claim – so Plaintiff's arguments and the documents he has submitted in support of his Motions for Summary Judgment are irrelevant. To the extent that Plaintiff seeks reconsideration of the Court's ruling on Defendants' Motion to Dismiss, Defendants reaffirm and incorporate by reference their prior arguments that Plaintiff has failed to exhaust administrative remedies. Nothing in Plaintiff's new filings present any evidence sufficient to justify reconsideration of the Court's prior ruling. The affidavits appear to argue the factual merit of the excessive force claim, but fail to address failure to exhaust, attach a grievance, or provide any

justification for that failure. With regards to Plaintiff's allegation that Defendants failed to timely respond to his interrogatories, Plaintiff was already given notice by the Court that the discovery time has passed. (Doc. No. 42 at 7).

**(3)** **Defendants' Motion for Summary Judgment**

    **(A)** **Motion** (Doc. No. 55)

Defendants argue that Plaintiff cannot maintain individual capacity claims against them because Plaintiff cannot produce evidence these Defendants personally acted to violate his rights. Plaintiff's housing move from a general population medium custody unit to a general population close custody unit was due to Plaintiff's pattern of behavioral problems necessitating closer monitoring in a modified housing unit. Gazoo played no role in the movement decision and was not even aware Plaintiff was moved until Plaintiff filed this action. Rorie was aware of the move, and the valid reasons why it was done, but played no role in the decision to move him. Plaintiff made a blanket assertion they were aware of the movement and it was wrong. He provides no explanation, attributes no words or actions, and otherwise has no factual basis to support individual capacity claims against them. – grant summary judgment because P failed to demonstrate these Defendants personally acted to violated his rights.

These Defendants have no authority or control over the injunctive and declaratory relief requested. Plaintiff's claims for injunctive and declaratory relief that dismissed Defendants Beaver and Rogers cease violence and threats against him have no bearing on his claims against Rorie and Gazoo. Further, Plaintiff is now housed at Maury C.I. whereas Rorie is now Case Manager at Southern Correctional Institution in Troy, NC, and Gazoo is now Programs Director for Classification at Anson C.I. Neither Gazoo nor Rorie has the authority or ability to institute injunctive or declaratory relief, or any connection with the enforcement of any act or policy by

NCDPS that Plaintiff alleges to have wronged him.

No due process violation occurred. The undisputed facts show that Plaintiff was not being moved as punishment or for a disciplinary proceeding, and he does not have a constitutional right to a particular custody level. A claim for declaratory relief and damages on allegations of deceit or bias by state officials involved in disciplinary proceedings that necessarily imply the invalidity of those proceedings are barred. Here, there was no requirement for due process protections because Plaintiff's move from general population on medium custody to general population on close custody on September 26, 2016 was not a result of disciplinary proceedings, did not diminish any of his credits, and did not result in solitary confinement. Due process protections do not apply because internal movement was not part of a disciplinary proceeding. He was moved to modified housing per policy due to his ongoing pattern of behavioral problems that required closer monitoring. Plaintiff was eligible to be moved to close custody at any time due to his Case Factor Score ("CFS"). The stated reason for the move was to monitor his behavior. It was his inability to remain infraction free that got him moved but the move was not in direct response to an infraction or to punish him for his infraction history. This was a routine movement. Further, due process protections do not apply because Plaintiff is serving a life sentence for murder so he cannot allege any action harm from lost credits, and the movement from one general population unit to another general population unit does not implicate solitary confinement. Because this was not a disciplinary issue, Plaintiff's only claim can be that the classification change violated his due process rights, but classification of inmates in the NC prison system is a discretionary administrative act that does not trigger a liberty interest. Plaintiff does not show atypical or significant hardship, only that he was moved unfairly from one location to another within the same facility. Even if Plaintiff could somehow show he was harmed by the move on September 26,

2016, and that Defendants cause that harm, he was housed at that location for only three days before his assault on staff members with a shank provided ample justification for a higher custody level. Three days is so *de minimis* that he can't show damages justifying continuation of this claim.

Defendants are entitled to qualified immunity because no constitutional violation occured and Defendants were not involved in the actions that caused Plaintiff to be moved. Even if it could be argued that Plaintiff's due process rights were somehow violated by his movement on September 26, 2016 from medium to close custody, it would not be clearly established that the routine movement of an inmate per policy would violate the inmate's rights.

**(B) Plaintiff's Response**

The Court notified Plaintiff of the importance of responding to Defendants' Motion for Summary Judgment and of the applicable legal standard. (Doc. No. 59). Plaintiff requested, and was granted, an extension of time to respond. (Doc. No. 61). The time to respond has now expired and Plaintiff has not filed a response.

**(4) Evidence**[3]

**(A) Affidavit of Edward Gazoo** (Doc. No. 57-1)

Defendant Gazoo was Programs Director at Lanesboro in September 2016. At that time, Lee Unit was a medium custody general population unit in which inmates were housed on bunks in a shared common area. Richmond Unit was a restrictive housing unit that primarily held inmates who were serving disciplinary sentences, being investigated for disciplinary infractions, being held on long-term restrictive housing for control purposes, and inmates in protective custody for their own safety. They are held in their cells for 23 hours per day with one hour to exercise. Union Unit

---

[3] This section is not exhaustive. The Court takes judicial notice of the applicable NCDPS Policy & Procedure. See Fed. R. Ev. 201.

was a close custody general population unit consisting of six pods with each holding approximately 50 inmates in single-occupancy cells. Inmates are permitted socialization during the date to congregate in the shared common area throughout the day and socialize or watch television.

Plaintiff had been found guilty of 87 infractions while in custody of NCDPS. During the six months prior to his assault on staff on September 29, 2016 and subsequent transfer to another facility on September 30, 2016, he was found guilty of six infractions. As a result of each serious infractions, including infractions that were ultimately dismissed or for which Plaintiff was found not guilty, Plaintiff would be moved within the facility from the general population unit in which he was housed to restrictive housing.

On September 26, 2016, Plaintiff was moved from Lee Unit to "JPODE" which is the E-Pod in Union Unit. Defendant Gazoo "ha[s] no recollection of [Plaintiff's] movement on September 26, 2016." (Doc. No. 57-1 at 3). Gazoo "played no role in the decision to move him. [Gazoo] was not even aware of it until this matter filed by [Plaintiff]." (Doc. No. 57-1 at 3).

In September 2016 E-pod was modified housing close custody unit in which inmates were more closely monitored because of their behavioral problems. This was a move "from a general population medium custody unit to a general population close custody unit." (Doc. No. 57-1 at 3). The Housing Assignment sheet does not reveal a reason for this movement.

On October 4, 2016, Plaintiff filed a grievance about the move; the step one response shows it was so his behavior could be monitored. During the six months before the September 26, 2016 movement while Plaintiff was housed on Lee, he "established an escalating pattern of engaging in sexually inappropriate behavior towards female staff members. He was disciplined twice for these infractions and received counseling once." (Doc. No. 57-1 at 4). There were several more investigations that were dismissed on procedural grounds and for which he was not disciplined.

6

His full infraction history shows he was found guilty of inappropriate sexual acts on 31 occasions. "This is consistent with the Step One Unit Response to his grievance that he was moved to modified housing so as to more closely monitor his behavioral patterns." (Doc. No. 57-1 at 4).

The purpose of modified housing is to more closely monitor certain inmates who have had recent and ongoing behavioral problems such that they now pose a risk to the security of the institution. "If an inmate meets the criteria, the unit authority refers the proposed assignment to modified housing to a supervisor at the facility with authority to provide final approval." (Doc. No. 57-1 at 4). Movement for this purpose follows policy governing the classification process.

An inmate's classification can be changed for a number of reasons, including as a result of a series of infractions changing their case factor score. (Doc. No. 57-1 at 5).

The CFS is a "process by which an Inmate's custody classification is determined based on their criminal history, incarceration status, program and work participation, health concerns, and any other relevant data, including infraction history." (Doc. No. 57-1 at 5). Should such a classification result in a demotion in custody level, this decision must be reviewed within six months by the Classification Committee.

By the time the September 26, 2016 movement would have been reviewed, Plaintiff's "brutal assault on four staff members on September 30, 2016 would have served as the primary factor reviewed for his custody level." (Doc. No. 57-1 at 5). Even while housed at medium custody before September 26, his CFS justified him being housed at close custody pursuant to policy.

Plaintiff was informed by his Case Manager on March 14, 2016 and May 26, 2016 that his CFS was 25, which denoted close custody and that he must remain infraction free to continue medium custody status. His case manager met with him on January 19, 2016, March 14, 2016, May 26, 2016, July 29, 2016 and September 19, 2016 and encouraged him to change his behavior

and remain infraction free, and that he was not progressing with his case management plan because of his infractions. However, during this period, he committed eight more infractions.

Housing assignments within the facility are decided on and executed by custody staff. "The Programs Department, including [Gazoo], would not generally know why an inmate was moved unless it was to Restrictive Housing. (Doc. No. 57-1 at 6). Inmates are routinely moved around in any facility for many reasons. The reason for a move is generally not documented unless it is for disciplinary purposes, which was not the case for Plaintiff's September 26, 2016 move.

Pursuant to policy, corrections staff are permitted to house a lower custody inmate in a higher custody bed such as a medium custody inmate moving to a close custody bed. But they are not permitted to house a higher custody inmate in a lower custody bed. Plaintiff's movement on September 26, 2016 to E-Pod, a "general population close custody modified housing unit, was not a demotion in custody or in response to a disciplinary action, neither of which is required by policy for this type of movement." (Doc. No. 57-1 at 6). It was done "for facility security and to monitor an inmate who was exhibiting behavior problems…." (Doc. No. 57-1 at 6). Plaintiff's assault on staff three days later did result in a demotion in custody level. Plaintiff was transferred to Polk C.I. the next day, September 30, 2016 (Doc. No. 57-1 at 7).

**(B)** **Affidavit of Angela Rorie** (Doc. No. 57-10)

In September 2016, Defendant Rorie was Unit Manager for Lee Unit, a medium custody general population unit. She supervised all staff on the unit and oversaw all issues with respect to inmates on the unit.

Defendant Rorie recalls that "while [Plaintiff] was on Lee Unit he had a pattern of behavioral problems related to sexual acts and that was the reason he was transferred to modified housing for closer monitoring." (Doc. No. 57-10 at 2). While Rorie recalls the reasons for that

8

movement, she "do[es] not recall any involvement with the decision to move him. However, any time [she] was involved in the decision to move any inmate from [her] unit to modified housing, [she] referred that proposed movement to [her] supervisor for final approval as required by NCDPS Policy and Procedures governing modified housing." (Doc. No. 57-10 at 2).

## II. LEGAL STANDARDS

**(1) <u>Summary Judgment</u>**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fec. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. <u>Id.</u>

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. <u>Id.</u> at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248; accord <u>Sylvia Dev. Corp. v. Calvert County, Md.</u>, 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion. Celotex, 477 U.S. at 324; Kipps v. Ewell, 538 F.2d 564, 566 (4th Cir. 1976); Fed. R. Civ. P. 56(e). However, a verified complaint, like the Amended Complaint that Plaintiff filed, is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991); Davis v. Zahradnick, 600 F.2d 458, 459–60 (4th Cir. 1979) (holding that the factual allegations contained in a verified complaint establish a prima facie case under 42 U.S.C. § 1983, so as to preclude summary judgment).

**(2) Due Process**

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. The first inquiry in any due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty that was accomplished by state action. Tigrett v. The Rector and Visitors of the Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988). "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not

implicated." Stone, 855 F.2d at 172. Moreover, "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." Daniels v. Williams, 474 U.S. 327, 328 (1986). A plaintiff does not have a federally protected liberty interest in any particular housing or classification unless it exceeds the scope of his original sentence and imposes an atypical and significant hardship in relation to the ordinary incidents of prison life. See Sandin v. Conner, 515 U.S. 472 (1995); Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) (*en banc*) ("[C]hanges in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation) and the denial of privileges … are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and efficiently.").

**(3)** **Qualified Immunity**

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The existence of qualified immunity "generally turns on the 'objective reasonableness' of the actions" without regard to the knowledge or subjective intent of the particular official. Am. Civil Libs. Union of Md., Inc., 999 F.2d at 784 (quoting Anderson v. Creighton, 483 U.S. 635, 639, 641 (1987)) (internal citations omitted).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims by determining whether: (1) the

facts that a plaintiff has alleged or shown make out a violation of a constitutional right; and (2) the right at issue was "clearly established" at the time of defendant's alleged misconduct. While the sequence of the steps set forth in Saucier is "often appropriate," it is not mandatory. Pearson, 555 U.S. at 236. Judges are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. Id.

To overcome the qualified immunity defense at the summary judgment stage, the plaintiff must have shown facts that make out a violation of a constitutional right, and the right at issue must have been "clearly established" at the time of the defendant's alleged misconduct. Thompson v. Commonweath of Va., 878 F.3d 89, 97 (4th Cir. 2017) (citing Pearson, 555 U.S. at 232). The analysis takes place against the backdrop of two dueling interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 231.

To find a right is clearly established does not mean that "the exact conduct at issue [must] have been held unlawful for the law governing an officer's actions to be clearly established." Amaechi v. West, 237 F.3d 356, 362 (4th Cir. 2001). Rather, the court's analysis must take into consideration "not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked." Id. at 362-63 (internal quotation omitted). Ordinarily, the unlawfulness of government conduct must be apparent in light of pre-existing law. White v. Pauly, 137 S.Ct. 548, 442 (2017). However, a "general constitutional rule … may apply with obvious clarity ... even though the very action in question has not previously been held unlawful. Hope v. Pelzer, 536 U.S. 730, 741 (2002) (citing United

States v. Lanier, 520 U.S. 259, 271 (1997)). Therefore, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Id. at 741.

### III. DISCUSSION

**(1) Plaintiff's Motions for Summary Judgment**

Plaintiff's Motions simply restate an excessive force claim that has already been dismissed and raises an alleged discovery violation that is untimely, as the discovery window has long expired. Because Plaintiff failed to fulfill his burden of coming forward with admissible evidence of the material facts entitling him to summary judgment, Defendants were not required to rebut his insufficient showing. See Ray Comm'n, Inc. v. Clear Channel Comm'n, Inc., 673 F.3d 294, 299 (4th Cir. 2012). Plaintiff's Motions for Summary Judgment will, therefore, be denied.

**(2) Defendants' Motion for Summary Judgment**

Plaintiff argues that Defendants violated due process by punishing him by moving him to close custody without a classification hearing or disciplinary board hearing in violation of NCDPS Policy & Procedure.

Defendants have submitted evidence demonstrating that neither of the Defendants had any role in changing Plaintiff's housing from medium custody general population to close custody general population, that the move was not disciplinary, that the move did not impose an atypical and substantial hardship on his living conditions, and that he is serving a life sentence that is unaffected by prison credits. Plaintiff has failed to come forward with any evidence rebutting the foregoing and has failed that there is a genuine dispute of material fact for trial. Because no constitutional violation occurred, Defendants are also entitled to summary judgment. For all the foregoing reasons, Defendants' Motion for Summary Judgment will be granted.

**(3) Other Pending Motions**

13

First, Plaintiff has filed a Motion to Appoint Counsel, (Doc. No. 43). He argues that his claim is not frivolous, that he presents exceptional circumstances, that his claims are legally complex involving medical damages/deprivation, violation of prison rules federal law or deliberate indifference. Plaintiff is incarcerated, has no access to legal assistance, NCDPS does not have a law library, and NCPLS does not provide legal assistance for inmates. There is no absolute right to the appointment of counsel in civil actions such as this one. Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel. Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). Plaintiff has failed to demonstrate that exceptional circumstances exist that would warrant the appointment of counsel. Therefore, his Motion will be denied.

In his Motion for Injunctions, (Doc. No. 44), Plaintiff argues that officials may not retaliate against inmates for filing grievances. He states "David C. Hatley is working here at Maury C.I. From: Lanesboro CI. Why!!! To: Retaliate and stop my case…." (Doc. No. 44 at 1). Plaintiff's claim for an injunction relates to Maury C.I., not Lanesboro where the incidents relating to the instant case occurred. Moreover, he no longer resides at Maury and therefore, even if his claim for injunctive relief was related to the instant case, it would be denied as moot. See Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991) (a prisoner's transfer moots a § 1983 request for declaratory and injunctive relief when the conditions of which the prisoner claims are unlikely to recur).

In his "Declaration for Entry of Default," (Doc. No. 48), Plaintiff appears to argue that more than 20 days expired since Defendants were served and that they failed to answer the Complaint, and that they have also failed to the discovery Plaintiff requested. Plaintiff's contention that Defendants failed to timely respond to the Complaint is incorrect. Defendant Gazoo waived service on November 26, 2018 and his answer or other response to the Complaint was due on

January 25, 2019. (Doc. No. 13). Defendant Rorie was served on December 4, 2018 and her answer was due on December 26, 2018. (Doc. No. 17). She sought an extension of time that was granted until January 25, 2019. (Doc. Nos. 17, 19). Defendants timely filed an Answer on January 25, 2019, (Doc. Nos. 20, 23). Therefore, Plaintiff's Declaration for Default will be denied.

In his Motion for Default Judgment, (Doc. No. 49), Plaintiff argues that a Motion to Compel Discovery was served on Defendants but that the requested items were not produced. Plaintiff asks the Court to enter judgment for $2.5 million compensatory damages, $150,000 punitive damages against each defendant, a jury trial, any additional relief the Court deems just. The Motion was filed on September 11, 2019, after the discovery cutoff date. See (Doc. No. 25). He was previously denied an untimely Motion to Compel, (Doc. No. 42), and the instant Motion for Default Judgment fails for the same reasons. This Motion will be denied.

**IV. CONCLUSION**

Based on the foregoing, Plaintiff's Motions for Summary Judgment will be denied, Defendants' Motion for Summary Judgment will be granted, the pending *pro se* Motions will be denied, and this case will be closed.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motions for Summary Judgment, (Doc. Nos. 50, 52), are **DENIED**.
2. Defendants' Motion for Summary Judgment, (Doc. No. 55), is **GRANTED**.
3. Plaintiff's pending Motions, (Doc. Nos. 43, 44, 48, 49), are **DENIED**.
4. The Clerk of Court is instructed to close this case.

Signed: January 22, 2020

Frank D. Whitney
Chief United States District Judge